**Clare Anne ARDIZZONE, Petitioner,**

v.

**William R. BAILEY, Respondent.**

Family Court of Delaware,
New Castle County.

Submitted: Oct. 9, 1987.
Decided: Oct. 29, 1987.

Patricia A. Dailey, of the Atty. General's Office, Wilmington, for petitioner.

Christine K. Demsey, of Waserstein & Demsey, Wilmington, for respondent.

ABLEMAN, Judge.

Before the Court is a Reciprocal Petition for Non-Support filed by petitioner, Clare Anne Ardizzone, naming as respondent William Bailey. The petition is filed pursuant to the Uniform Reciprocal Enforcement of Support Act ("URESA") and seeks child support for the parties' minor child, Dona Elizabeth Bailey, born 12/3/74.

Also before the Court is a Petition for Specific Performance Under Separation Agreement filed by William Bailey naming as respondent Clare Ann Ardizzone. The petition seeks specific performance of an Agreement into which the parties entered on December 7, 1976. Specifically, the petitioner seeks enforcement of the provision permitting him to claim the parties' child as an exemption for federal and state income tax return purposes. The petition further

requests the Court to enforce the provision permitting the parties to "renegotiate from time to time the amount of child support payable by Husband based upon their child's needs and Husband's resources and earnings" and alleges that respondent has failed and refused to renegotiate support when Husband's resources and earnings could not support the original sum of $250.00 per month.

On the date scheduled for hearing before Master McDonough, the Master held an office conference with counsel at which time it was agreed that the Interim Order of Support of $250.00 per month, which was entered on March 12, 1987, should be affirmed and it was therefore so ordered. With respect to the question of arrears, the Master referred this matter to a Judge over the objection of counsel for respondent William Bailey. This is the time the Court set for a hearing on the matter of arrears as referred by Master McDonough. In addition, the Court consolidated the Petition for Specific Performance with the arrears petition filed pursuant to URESA, since the question of arrears also involves the interpretation of the Separation Agreement and whether or not there has been a breach of that Agreement.

■ Prior to this hearing, Mr. Bailey filed a Motion to Dismiss seeking to dismiss the URESA action for lack of jurisdiction. The Motion also seeks dismissal pursuant to Family Court Rule 37(b), for failure of the Division of Child Support Enforcement to submit documents as required by this Court's Order. In the Motion, Mr. Bailey argues that the Court does not have jurisdiction for the enforcement of a Delaware Separation Agreement under URESA. Pursuant to 13 *Del.C.* § 601 *et seq.*, this Court has jurisdiction to enforce a provision of a Separation Agreement that provides for the support of a minor child and to determine arrearages that have accrued pursuant to the Separation Agreement.

■ Mr. Bailey also contends that he did not receive the tax returns of Ms. Ardizzone that were required to be produced by Order of this Court dated August 17, 1987. In response, counsel for Ms. Ardizzone indicated that the returns had in fact been provided for the years 1980 through 1986 and that the delay in providing those returns had been explained to Mr. Bailey's counsel. The delay resulted from the fact that all requests for information from reciprocal cases must first be processed through the individual's reciprocal state agency. At trial, counsel for Mr. Bailey objected again due to the fact that only the front page of the returns had been provided and she required the second page of the return and any attachments or schedules to determine the amount, if any, of benefits received by Ms. Ardizzone in claiming tax exemption for the child. The Court refuses to dismiss the petition on the basis of Ms. Ardizzone's failure to provide the second pages, as I am satisfied from her testimony that she believed that she was in compliance by providing the front page, and that any need for the additional pages can be remedied by a requirement that they be provided, subsequent to trial, if the amount of such tax savings becomes relevant to any of the issues in this litigation. The Motion to Dismiss is therefore denied.

■ At the hearing, the Court heard testimony from Ms. Ardizzone, who will hereafter be referred to as "Mother", and from Mr. Bailey, who will hereafter be referred to as "Father", regarding their understanding of the Separation Agreement and the events that occurred since it was executed by the parties in 1976. The parties agree that the Agreement, which provides that Father should pay $250.00 per month child support, specifically indicates that, "the parties agree to renegotiate from time to time the amount of child support payable by Husband based upon their child's needs and Husband's resources and earnings." The evidence establishes that Father paid $250.00 per month pursuant to the Agreement for a period of time until approximately May 1981. Around that time the parties apparently had a disagreement about whether or not the child could fly on an airplane by herself to Delaware from Michigan, where the Mother had relocated with her new husband. In June, Father stopped payment on his $250.00 support

check and instead sent her only a $125.00 payment. Mother was never contacted directly, or through her attorney, nor did Father's attorney ever contact either to request that the support be modified as permitted under the Separation Agreement.

Father claims that he did attempt to renegotiate with Mother. The evidence establishes, however, that, while he may have telephoned her once in 1981, obviously without results, he instead took it upon himself to modify the amount of child support as is apparent from his "stop payment" of the $250.00 support check, his tender of a $125.00 check instead, and a letter written shortly thereafter dated July 14, 1981, in which Father concluded by stating, "[f]rom now on I intend to send you what I can afford and I feel is reasonable, if you choose not to accept the checks I send, that is your matter. Any returned checks will be directly deposited into a savings accounts in Dona's name."

Mother was not satisfied with this arrangement and, as a result, for a period of time she refused to accept the checks. Finally, she started accepting them because the cost of raising her child was increasing and she began to realize that it was "cutting off her nose to spite her face" not to accept at least a partial payment towards the amount of support that was due under the Separation Agreement. Eventually, she filed the instant support petition through the support agency in Michigan under the Uniform Reciprocal Enforcement Support Act. Prior to filing the support action, however, she did write a letter to Father indicating that it was unfortunate they were unable to resolve the support matter and that she hoped that they would be able to settle it amicably. In return, she received a response from Father indicating specifically what he had earned during the years 1977 and 1985, and the amount of child support that he had paid, including the amounts he claimed for travel expenses during this time. Also contained in the letter are statements regarding his dissatisfaction with Mother's perception of the shared custody arrangement, and an indication that he could not afford to pay the amount of support that he was required to

pay pursuant to the Separation Agreement. Father concluded by writing, "[B]elow are my intentions for contributing to Dona's support for the next three years" and thereafter a list of separate amounts that he would pay each month. He also included in the enumerated instructions, "[y]ou may continue to use the IRS deduction."

Mother testified that her earnings from 1981 to the present time were below her actual earning capacity as a result of her decision to work only part time in certain years. Fortunately she has been supported by her husband, who is a psychologist, and has thereby been able to provide for the needs of the family, including Dona. Mother's current annual salary will be $19,-500.00. Although Mother did not earn much more than what Father was earning during the years in question, and, in some years even less, she is not requesting a modification in the amount of child support on that basis. She merely requests that Father be required to pay support in accordance with the Agreement for the years that he determined, unilaterally, to pay less.

Father testified that he presently lives in Arden with his wife and her adult son, who is employed part time. Father's wife is now partially disabled and works only part time. Father testified that after separation custody was shared on a one week/two week basis, but the situation changed when Mother moved to Ann Harbor, Michigan. From 1981 through 1982 the child was with Father for approximately six weeks but thereafter she has stayed with him only about three weeks each year due to his working schedule. Father claims that he bore the cost of airline tickets for those trips. From records that he could locate, he reports that he has paid approximately $4,300.00 in airfare since Mother moved to Ann Arbor in 1977. He also states that he has purchased clothing for her on occasions when she is with him. Mother claims that she too paid airfare for the child, particularly when the child was too young to fly alone, and she was required to accompany her on flights for which she purchased her own tickets.

Father contends that it was the intent of the parties that the Agreement could be modified, and that his income, particularly in 1982 and 1983, was drastically lower than his income at the time that the support Agreement was negotiated due to failure in his business ventures. He argues that Mother's refusal to renegotiate the support amount justified his unilateral decision to reduce the support in half. Father testified that his income for the years 1981 through 1986 was as follows:

| | |
|---|---|
| 1981 | $12,880.00 |
| 1982 | $ 1,934.00 |
| 1983 | $ 4,142.00 |
| 1984 | $12,759.00 |
| 1985 | $15,127.00 |
| 1986 | $19,916.00 |

At present Father works at Control Data Corporation, the same job that he had in 1986, when he earned nearly $20,000.00.

Although Father contends that "he discussed negotiating at least once with the Mother around 1981", it is obvious from her refusal to accept the checks for several years that she was not willing to agree to his decision to reduce support. Father never filed a petition with the Court to obtain modification of the amount based on a change in circumstances. Father claims that in 1982 his income was substantially reduced because he was, at that time, a co-proprietor in a cabinetmaker's shop and his partner, who was an alcoholic, apparently created problems that "caused the bottom to drop out" of his business. In 1983 he became associated with another individual in a kitchen business but obviously did not make a success of that business either. Father acknowledged on cross-examination that, during this two-year period, he never sought a permanent job but continued to pursue ventures that he thought would bring more money. And, although he claims in the July 14, 1981, letter that he would place any checks that were not negotiated by Mother in an escrow account for Dona's benefit, he testified at trial that he only maintained the account for a year but then used these funds to support his own family.

Father requests that the Court retroactively modify the amount of support that he was paying, during the years that he was earning below minimum wage, and further requests that he be permitted to utilize the tax exemption for Dona, pursuant to the Agreement. In that regard, the evidence shows that Mother began using the tax deduction after she concluded that she was paying far more than fifty percent of the support for her daughter. Father in fact had agreed to allow her to do so. It is clear to the Court that, at least for the years 1982 and 1983, the exemption would have provided no monetary benefit to Father in any event.

The parties did not dispute Mother's calculation that the arrearages in this matter amount to $12,034.00 through March 1987, at which time the Interim Order of support of $250.00 per month was entered by the Court, which Order later became the prospective child support Order in this case.

I conclude from my consideration of the evidence that the Separation Agreement, into which the parties entered in 1976, should be enforced for the entire period, even including those years that Father's income was substantially below his earning capacity as is evidenced by his earnings in 1981, 1984, 1985, and 1986. Although the Agreement provides for renegotiation of the amount of child support from time to time, based upon the child's needs and Father's resources and earnings, Father made no attempt to "negotiate" this Agreement with Mother. Nor did he seek recourse in this Court failing the parties' ability to reach a suitable modification. Instead, Father chose simply to reduce the amount of support that he was paying, in accordance with his own concepts of fairness and equity. While that amount may have been all that he could afford during the years 1981 and 1982, and while the Court could have agreed with him had a petition been filed at that time, it is nevertheless obvious that Mother never agreed to such a modification, evidenced her disagreement by a refusal to cash the checks that were tendered, and, despite her equally low income, continued to maintain the position that the

Agreement, as executed, set forth the legal support obligation of the Father.

Father's counsel argues that, even with the existence of a Separation Agreement, this Court has the authority, pursuant to *Solis v. Tea*, Del. Supr., 468 A.2d 1276 (1983) and *Husband B. v. Wife H.*, Del. Supr., 451 A.2d 1165 (1982), to modify a child support provision in the best interests of the child. The Court fully agrees with this authority and recognizes that both of the foregoing decisions permitted modification by way of decreasing the obligor's child support obligation, after finding such a modification to be in the best interests of the children. Those cases are distinguishable from the instant case, however, in that Father herein never sought a modification in this Court during the several years that he chose to pay only half of what he was required to pay under the Agreement. Had Father filed such a petition, the Court could have, temporarily at least, provided him with some relief. But, the Court would also have required that Father attempt to find full-time employment, and certainly would have entered an Order directing him to make job applications. During the period of Father's hardship, the Court could then at least have monitored the situation to have assured that, as soon as possible, this child would receive a fair amount of support. Because Father totally failed to seek modification through Court Order, but instead took it upon himself to determine the amount of support to pay, he has placed himself in a far different position from the support obligors in the two decisions upon which he relies.

Moreover, this Court has often recognized that, in seeking a modification of a child support Order that would decrease the amount of support for the benefit of the child, the burden is upon the obligor to prove that he is entitled to a modification on the basis of a justifiable change of circumstances. *Vane v. Vane*, Del. Fam., File No. B–2118, Wakefield, J., (November 19, 1982); *Halsey v. Halsey*, Del. Fam., File No. B–2342, James, J., (January 10, 1980). And, the Court has consistently held that, where a support obligor is not working full time, or is working below full earning capacity, and the reason for such a limitation of earnings is a matter of choice by the obligor, or the obligor has not expended his best efforts to be fully employed in a position compatible with his vocational skills, the Court may consider evidence establishing the obligor's earning capacity in the local job market, or attribute up to half of the household income. *See*, e.g., *O'Malley v. Shavico*, Del. Fam., File No. 3–7572, Poppiti, J., (April 30, 1979); *Swedenhjeln v. McNair*, Del. Fam., File No. C–5643, Poppiti, J., (October 4, 1979); *Landis v. Landis*, Del. Fam., File Nos. 2370–71 and D–8621, Poppiti, J., (March 30, 1983).

While there is no question that Father's circumstances did change during the years 1982 and 1983, this Court is not satisfied from the evidence that, during those years, Father made every effort to obtain employment compatible with his vocational skills, or that he expended his best efforts to be fully employed in accordance with his earning capacity. The evidence demonstrates the contrary. Indeed, Father specifically acknowledged that he never sought a permanent job. Had the Court had the benefit of reviewing the support amount during that period, it certainly would have required him to make efforts to seek permanent employment as it does in all instances where a support obligor is earning less than minimum wage. *See also, Boulden v. Boulden*, Del. Fam., File No. D–8939, Ableman, J., (January 16, 1987).

In the *Boulden* case, this Court held that, although the Father's financial circumstances had changed since he left his full-time employment to pursue a new business, he could not do so at the expense of the support of his child. In so holding, the Court stated as follows:

While the law cannot preclude an individual from making employment decision for personal, emotional, business, or even impulsive reasons, and while an individual is always free to engage in new endeavors, such decisions do not entitle one to decrease his child support if to do so would diminish the funds available to support the child. If the Father wishes to make the sacrifices required in the

initial stages of a new business, with the expectations of more profitable years to come, the child should not be expected to be similarly deprived, particularly when she will not necessarily share the profits that accrue during more profitable future years.

*Id.* at page 7.

Father further argues that it was not only up to him to apply to the Court for relief under the Separation Agreement and that Mother was obligated as well to seek modification, rather than ignore the situation. While the arrears that have accrued in this case may not have reached the current high level had Mother sought support at an earlier date, this is not an excuse for Father's decision to reduce the support. Mother simply stood by the Agreement and chose not to seek a modification of it. It was Father who desired that the amount of the support under the Agreement be modified, and it was therefore his obligation to seek the relief that he desired. Since only he would benefit from such a modification, it would be unreasonable to assume that Mother would be inclined to request relief pursuant to the modification provision of paragraph 4.

Father claims that, as a layman, he was not aware of his obligation to seek relief in the Family Court. He submits that he should not now be penalized for his failure to obtain a modification during the years that he could not afford to pay $250.00 per month. Having observed Father testify at trial, I simply cannot believe that this individual, who was able to execute and understand the provisions of the Separation Agreement, was so ignorant that he did not know to consult an attorney, or to seek relief in the Court. I conclude that Father, who appears to be fairly educated and intelligent, preferred instead to comply with the Agreement on his own terms. This attitude is evidenced by the correspondence from Father to Mother, which did not invite negotiation but merely stated his intentions. And, although Father's present arguments could have been persuasive to the Court during the years that he suffered business losses, the Court is hard pressed to understand how he could have continued to make such reduced payments during years that his income was closer to the level of his earning capacity.

Under these circumstances, the Court concludes that Father did not have sufficient justification for unilaterally reducing the amount of support during the years that he paid Mother only $125.00 per month, rather than the $250.00 per month required under the Agreement. Absent a modification of that Agreement, either through negotiations or through Court Order, Father was required to comply with the Agreement, and I find that the support amount set forth in paragraph 4 of the Agreement should be fully enforced for the entire period in question. Accordingly, since the parties agree that the arrearages amount to $12,034.00 through March 1987, I hereby establish arrears in that amount. Counsel are directed to communicate with one another in an attempt to establish the manner in which the arrears shall be paid and are directed to present an Order to the Court setting forth such a payment arrangement.

Father further requests, pursuant to his Petition for Specific Performance, that he be permitted under paragraph 4 of the Separation Agreement to have the benefit of claiming the daughter as an exemption for federal and state income tax return purposes during the years that he permitted Mother to claim the tax exemption.

■ I have reviewed Father's tax returns for the years in question and am satisfied that he should not be entitled to take the tax deduction during the years that he was only paying Mother $125.00 per month, even in spite of the arrearages that have been ordered under this decision. I am satisfied that the expense of requiring the parties to file new tax returns to accomplish the objective sought by Father would not be fair to Mother. Moreover, had it not been for Father's unilateral decision to reduce the amount of support during those years, and his stated willingness to permit Mother to utilize the tax exemption for the child, he could have continued to have claimed the deduction himself. The

burden of requiring Mother to file amended tax returns for six years would be unfair, especially since it was reasonable under the circumstances for her to take the deduction. Accordingly, while I will permit Father to take the tax exemption prospectively to the Separation Agreement, I will not require Mother to amend her tax returns for prior years.

█ Finally, Father requests that he be given credit for his travel expenses to bring the child to visit him in Delaware as it was Mother's choice to relocate to Michigan and he has had to shoulder the burden of paying for airfare since 1977. Counsel for Mother argues that, had Father had the child in his care on alternating weekends, rather than the three weeks per year that he presently sees his daughter, it would cost him far more than the cost of airfare to support her. The Melson Formula, which was apparently applied to this case, resulting in the Agreement to pay $250.00 per month, includes reasonable visitation with the non-custodial parent as a built-in factor. The formula thus is premised upon the fact that a child will spend alternating weekends with the non-custodial parent who, in addition to his regular child support, will also be paying for that child's needs, including food and entertainment, during periods of visitation.

I am satisfied from Father's testimony that he currently sees his daughter only about three weeks a year, and that he is therefore not incurring higher costs than if the parties were living in the same area and visitation was occurring on alternating weekends. As counsel points out, the airfare, when calculated over a fifty-two week period, hardly amounts to the sum that it would cost to feed the child if she were to visit with her father every other weekend. Moreover, when the Separation Agreement was first executed by the parties, the child was spending at least a full week every three weeks with her father. She does not spend nearly that much time with him under the present arrangement. While this may not be acceptable to the Father from an emotional prospective, the fact is that it is costing him far less than it would cost had the Mother not relocated to Ann Arbor, Michigan. I therefore decline to give credit to Father for the expenses incurred in transporting the child between Ann Arbor and Delaware.

IT IS SO ORDERED.